(32 App. Div. 423.)

BROWN et al. v. WADSWORTH et al.

(Supreme Court, Appellate Division, Second Department. July 23, 1898.)

1. TRUSTS—MARRIAGE SETTLEMENTS—RULE IN SHELLEY'S CASE.

In 1827 certain real property was conveyed, under the direction of the court of chancery, to the guardian of an infant married woman, in trust to receive and pay over the rents and profits to her for life, and thereafter to her husband for life, and, from and after the death of both, "to have and to hold the same premises, and the rents, issues, and profits thereof, in trust for the use, benefit, and behoof" of her right heirs, to them, their heirs and assigns, forever. The husband's rights were subsequently extinguished, and, by order of court, the trustee conveyed to the wife, and she conveyed to one of her three children in fee. Held, in an action of ejectment brought by the heirs of one of the other children after their mother's death, that as the several interests limited in the original deed were equitable interests of the same nature, and the trusts prescribed were executed trusts, the rule in Shelley's Case applied, and that the defendants, claiming under the deed to the son, had the better title.

2. TRUST DEED—CONSTRUCTION.

In 1835, the trustee, with the wife, who had then reached majority, and her husband, petitioned the court to allow a sale of the property, and the investment of the proceeds in the purchase of other real property, to be taken by the trustees upon the like trusts as were expressed and declared by the original conveyance in trust; and, under an order made accordingly, the original property was conveyed by a deed executed by the trustee and by the wife and husband, and the new property was conveyed to the trustee under the same trust. It was this latter property which was conveyed by the wife to her son. *Held,* that, while intermediate the two conveyances in trust the rule in Shelley's Case had been abolished, the intention was to have the new property held on the same terms as the old, and that the rule accordingly applied to the second deed.

3. MARRIAGE SETTLEMENTS.

The doctrine that agreements for a settlement of a wife's separate estate, in view of marriage, were excepted from the operation of the rule in Shelley's Case, did not apply where the settlement had actually been completed by a formal deed.

Appeal from special term, Kings county.

Action by Helena I. Brown and others against Mary N. Wadsworth and others. From a judgment in favor of plaintiffs, defendants appeal. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Josiah T. Marean, for appellants.

Edward B. Whitney (Charles Robinson Smith and Louis Dean Speir, on brief), for respondents.

WILLARD BARTLETT, J. This is a suit in ejectment relating to the property known as "No. 118 Bridge Street," in the borough of Brooklyn, in which the plaintiffs claim an undivided one-third interest. The facts are not in dispute, and the question whether the title is in the plaintiffs or in the defendants depends upon what conclusions of law should be drawn from those facts. The trial court has found in favor of the plaintiffs, and the defendants have appealed.

The land in controversy stands in the place of certain interests in real estate which belonged in 1827 to Catharine Russ, who was then between 18 and 19 years of age, and the wife of John A. Russ, an officer in the United States navy. These real-estate interests were sold in that year for her benefit, under the direction of the court of chancery of this state. William Cornell, the guardian, by whom the sale was conducted, invested $2,500 of the proceeds, by the authority of the same court, in the purchase of certain other real estate at the corner of York and Washington streets, in what is now the borough of Brooklyn, from one Ebenezer Tallman, and took a deed therefor bearing date April 3, 1827, in which, at the end of the habendum clause, was contained the following provision:

"In trust, nevertheless, to receive the rents, issues, and profits thereof, and pay over the same to said Catharine Russ for and during the term of her natural life, and from and after the death of said Catharine Russ, leaving the said John A. Russ, her husband, then upon trust to pay such rents, issues, and profits to the said John A. Russ during his natural life, and from and after the death of said John A. Russ, in case he survive the said Catharine, and also from and after the death of the said Catharine Russ, whether the said John A. Russ be then living or dead, to have and to hold the

same premises, and the rents, issues, and profits thereof, in trust to and for the use, benefit, and behoof of the right heirs of the said Catharine Russ, to them, their heirs and assigns, forever."

One Daniel Richards succeeded William Cornell as trustee under this deed. In 1835 this new trustee, together with Catharine Russ and John A. Russ, by his wife, as attorney in fact, filed a petition in the court of chancery praying that the trustee might sell the York and Washington street property, already mentioned, for $4,000, and that he might invest $3,250 of the proceeds in the purchase of the dwelling house and lot in Bridge street which form the subject-matter of this action. The petition set forth that the proposed purchase was an advantageous and a desirable investment for the trust fund, and prayed that the conveyance might be taken by the said Daniel Richards (the new trustee) upon the like trusts as were expressed and declared in and by the original conveyance already mentioned as having been made in 1827 by Ebenezer Tallman to William Cornell, the first trustee. The application was referred to Stephen Cambrelong, a master in chancery, who reported favorably upon it, declaring that he considered the sale of the York and Washington street property advantageous to Catharine Russ, the cestui que trust, and that a reinvestment of part of the funds in the purchase of the Bridge street property would be highly advantageous to her. Accordingly, on March 26, 1835, the vice chancellor made an order directing the trustee to sell the York and Washington street property, and purchase that in Bridge street. Thereupon the York and Washington street property was conveyed to one William T. Ryer, by a conveyance which was executed by Daniel Richards, as trustee and individually, and by Catharine Russ and John A. Russ, by Catharine as his attorney. Shortly afterwards, by a deed dated April 29, 1835, the Bridge street property was conveyed by Daniel Bedell, the owner, to Daniel Richards, as trustee of the separate estate of Catharine Russ. The conveyance contained substantially the same trust provision as that which has been already quoted from the deed of 1827. There were three children of the marriage of Catharine Russ and John A. Russ, viz. John A. Russ, Jr., Ulmer C. Russ (the father of the plaintiffs), and Cornelia Matilda Russ (now Cornelia Matilda King). Catharine Russ obtained a divorce from her husband, John A. Russ, in 1852. The decree adjudged that, for alimony and maintenance to the wife, "any and all interest and estate of the said John A. Russ, in possession, reversion, and remainder, in the real estate described and conveyed by the said indenture from Daniel Bedell to Daniel Richards, trustee as aforesaid, be extinguished, so that the same shall be and remain to the said Catharine Russ and her heirs in the same manner and to the same extent as if the said John A. Russ were now actually dead." Four years later, under an order of the supreme court made upon its own motion, Daniel Richards, as trustee, by deed dated September 4, 1856, conveyed the premises to Catharine Russ, to have and to hold the same "unto the said party of the second part, her heirs and assigns, to her and their only proper use, benefit, and behoof forever." In 1866, Catharine Russ made a deed of conveyance of the whole property to her son John A. Russ, Jr., from whom the defendants derive

their claim of title. The plaintiffs, on the other hand, assert a legal title to an undivided one-third interest in the premises under the deed of 1835, as heirs at law of Catharine Russ, being the children of her son Ulmer C. Russ. Catharine Russ died in 1894.

After the sale of her real property interests in 1827, the proceeds being in court, and belonging to an infant who was also a married woman, the court of chancery doubtless had power to deal with it in such a way as to secure an adequate provision for the wife free from the interference of her husband. 2 Pom. Eq. Jur. (2d Ed.) §§ 1114, 1118. It is difficult to perceive, however, what authority the court possessed to deprive her of all power finally to dispose of the fund upon her death, as we must hold it undertook to do if the rule in Shelley's Case be held not to apply to the deed of 1827, by which the trust in her separate property was originally established. After considering the question carefully in its various and somewhat complicated aspects, I have come to the conclusion that the rule in Shelley's Case should be held to control the effect of the deed of 1827. It was not changed in this state until the second part of the Revised Statutes went into effect, at the beginning of 1830. The rule "applies to equitable as well as to legal estates in the case of executed trusts." 2 Washb. Real Prop. (5th Ed.) 650. In such a case it is necessary that the precedent interest and the interest in remainder should be either both legal or both equitable. The trusts prescribed were executed, as distinguished from executory, trusts, in the technical sense (1 Perry, Trusts [4th Ed.] § 359); and it seems to me that the several interests limited therein were equitable interests of the same nature, so as to subject the instrument to the rule in Shelley's Case (McWhorter v. Agnew, 6 Paige, 111). In the case cited, the wife conveyed the property to trustees, to hold it in trust for her separate use and benefit notwithstanding her coverture, and upon the further trust to hold the property for the use of such persons as the complainant should by will appoint, and, in default of such appointment, for the use of the wife's heirs, to the exclusion of her husband either as tenant by the curtesy or otherwise. I can see no essential difference between this trust and that in the case at bar; and the chancellor declared that, "as the limitations were both limitations of equitable estates or interests of the same nature, the rule in Shelley's Case applied to the equitable estate conveyed."

Whatever power the court may have possessed over the proceeds of her real property interests which it caused to be sold when she was an infant, in 1827, I think Mrs. Russ sanctioned the action which was taken in respect of those proceeds in 1827, when, in 1835, she joined in the conveyance of the York and Washington street property, and the acquisition of the Bridge street property in its place. By her petition initiating the proceeding, she expressly requested that the Bridge street property should be acquired upon the like trusts as were expressed and declared in the original trust conveyance of 1827; and she could hardly manifest her approval of the disposition of the fund directed by the court in her behalf when she was a minor in any clearer manner than by thus seeking to have the arrangement continued. It is argued in behalf of the appellants that Mrs. Russ was

under an absolute disability to affirm the trust investments until the date of her divorce, in 1852; but this view does not seem to be correct. After attaining her majority, she was capable of disposing of her separate estate at pleasure, notwithstanding her coverture. Jaques v. Methodist Episcopal Church, 17 Johns. 548. If so, I can perceive no good reason why she was not competent to approve a disposition of her separate estate which had been made by the court in her behalf during her infancy.

Her affirmance at this time, however, of the trust established by the court in 1827, is to be deemed only an affirmance of the deed of that year, as affected by the rule in Shelley's Case; that is to say, she sanctioned in 1835 a disposition of her property in 1827 which would leave her at liberty to devise the fee subject to her husband's life estate, and gave no vested remainder to her heirs. In behalf of the respondents, it is argued, and it was held in the court below, that, whether the rule in Shelley's Case applied to the deed of 1827 or not, it had no application to the deed of 1835, by which the trustee of the separate estate of Mrs. Russ acquired the Bridge street property in lieu of the York and Washington street property. The circumstances under which that deed was made, however, indicate to my mind that the parties in interest did not intend to make any change whatever in the character of the trust. Their only purpose was to substitute one piece of property for another piece of property as the corpus of the trust fund. If the rule in Shelley's Case applied to the deed of 1827, as I think it did, they intended that it should apply equally to the deed of 1835; and there does not seem to have been any legal obstacle to an agreement between them, express or implied, that the effect of the language by which the trust was continued in 1835 with respect to the Bridge street property should be just the same as that of the language by which the trust was established, in 1827, with reference to the York and Washington street property. As has already been shown in stating the facts of the case, Mrs. Russ petitioned for the substitution of the Bridge street property in place of the York and Washington street property, upon the ground that the change would furnish a more desirable investment of the trust fund. The master in chancery approved it on that ground; and the order of the vice chancellor directing the substitution declared that the intended purchase of the Bridge street property was highly advantageous to the said trust. In reality, the trust was to be continued, not altered; and it could only be continued unchanged by leaving the language in the new deed like the language of the old deed, subject to the rule in Shelley's Case. In other words, the deed of 1835 is not to be regarded as a new instrument, so far as the creation of a trust is concerned, but rather a means of bringing new property under an old trust. It may be suggested that the deed of 1827 can be viewed as a marriage settlement in favor of the wife, established by the court in her behalf, and hence that the rule in Shelley's Case did not apply to it. The doctrine, however, that agreements for a settlement of a wife's separate estate in view of marriage are excepted from the operation of the rule in Shelley's Case, does not apply where the settlement has actually been completed by a formal deed. Cushing v. Blake, 30 N. J. Eq. 689, 701.

It follows from what has been said that the defendants have a better title, upon the facts disclosed in this record, and that the judgment in favor of the plaintiffs should be reversed, and a new trial granted.

An examination of the various proceedings in court and out of court, and the several conveyances, beginning with the deed of 1827, leaves no doubt on one point, and that is that the several courts which dealt with the matter, and all the parties concerned, have acted throughout on the assumption that the heirs of Catharine Russ had never acquired any remainder or other interest in the trust property. If there had been any idea that such a claim existed on their part, it is hardly supposable that the purchaser of the York and Washington street property, in 1835, would have been content with a deed executed simply by the trustee and Mr. and Mrs. Russ, or that the court, in 1856, after the divorce, would have authorized the trustee to convey the property in fee simple to Mrs. Russ herself. All concur.